Joyce BLANTON, Plaintiff,

v.

The CITY OF INDIANAPOLIS, INDIANA, The Indianapolis Police Department, James Toler, as Chief of Police for the Indianapolis Police Department, Paul Annee, Individually, Thomas Black, # B9104, as an Indianapolis Police Officer and Individually, Steven Dubois, # D5941, as an Indianapolis Police Officer and Individually, Michael Bates, # B3214, as an Indianapolis Police Officer and Individually, Michael Elder, # E0028, as an Indianapolis Police Officer and Individually, Kevin Kinnee, # K8012, as an Indianapolis Police Officer and Individually, Terry Hall, # H3672, as an Indianapolis Police Officer and Individually, Richard Stevens, # S7398, as an Indianapolis Police Officer and Individually, Robert Taylor, as an Excise Officer for the State of Indiana and Individually, and John Does, as Captains, Lieutenants, and Sergeants for the Indianapolis Police Department and Individually, Defendants.

No. IP 92–C–299.

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 9, 1993.

John O. Moss, Moss & Walton, Indianapolis, IN for plaintiff.

Andrew P. Wirick, City–County ˙Legal Div., Joseph R. Pitcher, Lowe Gray Steele & Hoffman, John C. Ruckelshaus, Ruckelshaus,

Roland, Hasbrook & O'Connor, Bruce G. Jones, Austin Jones & Morken, Michael A. Schoening, Deputy Atty. Gen., Indianapolis, IN, for defendants.

## ORDER ON MOTIONS TO DISMISS

McKINNEY, District Judge.

Two motions to dismiss have been filed in this cause pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure—one by defendant Robert Taylor, and one by the remaining identified defendants. Both motions are briefed and ready to be resolved.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts recited in the complaint, which this Court takes as true for purposes of the present motion, *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir.1990), are as follows. After an afternoon excursion on March 13, 1991, Joyce Blanton returned to her residence in Indianapolis and found the front door standing ajar, apparently after being opened by force. When Blanton went into the house, Indianapolis Police Department ("IPD") officer Thomas Black ("Black"), Indiana state excise officer Robert Taylor ("Taylor"), and IPD officers Steven Dubois, Michael Bates, Michael Elder, Kevin Kinnee, Terry Hall, and Richard Stevens (collectively the "six IPD officers")[1] all were waiting inside. When Blanton asked what was going on, Black told her that he had "kicked the God Damn door in." Black and the six IPD officers then arrested Blanton, searched her, and seized her property, all without probable cause or a warrant.

Blanton then was detained for some three and one-half hours, although it is not clear whether this occurred at her home or elsewhere. During this time, Blanton, a diabetic, was not allowed to use the restroom, even though she told Black that she had diabetes and needed to urinate frequently. Eventually, Blanton urinated on herself. Black taunted and harassed Blanton, calling her "an ignorant bitch," telling her to "shut your God Damn mouth," threatening to take her life, and touching her breast with his hand. In addition, when Blanton refused to sign an unspecified document, Taylor said, "I don't give a fuck whether you sign it or not, we are going to own every god damm (sic) thing you got."

Blanton initiated this suit on March 13, 1992, and her complaint alleges numerous violations. Blanton first seeks relief pursuant to 42 U.S.C. § 1983[2] from Black, individually and in his official capacity as an IPD officer; Taylor, individually and as an excise officer for the State of Indiana; the six IPD officers, individually and in their official capacities; the City of Indianapolis (the "City"); IPD; James Toler, in his official capacity as chief of IPD; former IPD chief Paul Annee, individually;[3] and several "John Doe" police officers, individually and in their official capacities. Blanton's complaint also seeks damages from Black, Taylor, and the six IPD officers for "violat[ing] Plaintiff's rights pursuant to" 42 U.S.C. §§ 1985(3)[4]

---

1. Blanton's complaint actually lists Black and the six IPD officers by last names with first initial and badge numbers only. However, the officers' full names were listed in their counterclaim for abuse of process, filed May 25, 1992, and thus are a part of the record.

2. Section 1983 states in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

3. Blanton's complaint was filed while Annee was still the Chief of Police. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Toler has

been substituted in the official capacity claim against Annee.

4. Section 1985(3) provides, in relevant part:
   If two or more persons in any State or Territory conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

and 1986[5]. Finally, Blanton's complaint seeks to recover from Black, the six IPD officers, Annee, and the John Doe defendants for violations of unspecified state law.

Taylor moved for dismissal of all claims against him on May 21, 1992. On May 28, 1992, all remaining defendants other than the John Doe defendants moved for dismissal of Blanton's § 1983 claims against the City, IPD, Toler in his official capacity, Annee in his individual capacity, and Black and the six IPD officers in their official capacities.[6] Blanton timely responded to these motions, and the defendants timely replied, so the motions are ripe for ruling.

## II. DISCUSSION

### A. *Claims Under § 1983*

#### 1. *First and Eighth Amendment Claims*

■ Initially, two of Blanton's apparent § 1983 claims—those premised on alleged violations of her First and Eighth Amendment rights—must be dismissed for failing to meet threshold pleading standards. In order to withstand a motion to dismiss under Rule 12(b)(6), a complaint must provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)); *see* Fed.R.Civ.P. 8(a). In § 1983 cases, this requirement means that a plaintiff must allege as a threshold matter that (1) the defendant, while acting under color of state law, engaged in specified conduct, and (2) the specified conduct worked to deprive the plaintiff of rights, privileges, or immunities secured to her by the United States Constitution or other federal law. *Brown v. City of Lake*

*Geneva,* 919 F.2d 1299, 1301 (7th Cir.1990); *Bayview–Lofberg's, Inc. v. City of Milwaukee,* 905 F.2d 142, 144 (7th Cir.1990).

■ Blanton's First and Eighth Amendment claims do not meet this standard. Blanton's First Amendment claim fails because although she claims that her case is "authorized and instituted pursuant to" the First Amendment, *see* Complaint ¶ 1, she recites no conduct by any defendant which constitutes a First Amendment violation, and no facts from which the existence of such conduct might be reasonably inferred. Blanton's Eighth Amendment claim fails because that amendment, while prohibiting the "unnecessary and wanton infliction of pain" upon detainees, *Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989), applies only when the detainee is a criminal that has been convicted. *Kinney v. Indiana Youth Center,* 950 F.2d 462, 465 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2313, 119 L.Ed.2d 232 (1992). Blanton does not allege that her detention occurred while she was a convicted criminal; the Eighth Amendment thus has no application to her case.

#### 2. *Claims Against Taylor*

■ Taylor argues that the remainder of Blanton's § 1983 claims against him, which contend that Taylor violated Blanton's rights under the Fourth and Fourteenth Amendments, should be dismissed for failing to allege that Taylor personally participated in any conduct that worked to deprive Blanton of her constitutional rights. Taylor says that the complaint makes only one specific allegation of an act done personally by him on the date in question—his statement to Blanton that "I don't give a fuck whether you sign [the paper] or not, we are going to own every god damm (sic) thing you got," Complaint

**5.** Section 1986 provides, in relevant part:
Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refused so to do, if such wrongful act be committed, shall be liable to the party injured ... for all damages caused by such

wrongful act, which such person by reasonable diligence could have prevented....

**6.** The defendants' motion technically asks for dismissal of all claims against Black and the six IPD officers in their official capacities, but their supporting memorandum addresses only Blanton's § 1983 claims. The Court accordingly has confined its discussion to those claims.

¶ 12—and argues that this is insufficient to state a claim for violating Blanton's rights under the Fourth or Fourteenth Amendment.

Taylor is correct. It is well-settled that a § 1983 claim against an individual must allege that the defendant personally participated in the constitutional deprivation. *Jones v. City of Chicago,* 856 F.2d 985, 992–93 (7th Cir.1988); *see also Howard v. Wheaton,* 668 F.Supp. 1140, 1144 (N.D.Ill.1987). Here, Blanton has made no such allegation with regard to Taylor. Taylor's only specifically alleged act—the use of abusive language—does not embody any constitutionally violative conduct. *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987) (and cases cited).

### 3. *Claims Against Annee*

Blanton's claim that Annee is liable individually under § 1983 for "condoning and continuing to condone the ... conduct of Defendant Black," which appears to be brought pursuant to the "failure to intervene" doctrine outlined in *Byrd v. Brishke,* 466 F.2d 6 (7th Cir.1972), is also insufficiently stated to withstand dismissal. In *Byrd,* the plaintiff was taken into the back room of a bar by about a dozen police officers and severely beaten. The plaintiff thereafter brought a § 1983 excessive force claim against all the officers. Despite the plaintiff's admission that he could not identify which officers actually had struck him, he sought recovery from all the officers who were present, claiming that even those who inflicted no blows should be liable for failing to intervene and prevent his beating. The Seventh Circuit agreed:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene

of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd,* 466 F.2d at 11; *see also Rascon v. Hardiman,* 803 F.2d 269, 276 (7th Cir.1986).

*Byrd* makes clear that "failure to intervene" liability against an officer may be imposed only where a violation occurs "in [the officer's] presence or otherwise within his knowledge." *Byrd,* 466 F.2d at 11. Nowhere, however, does Blanton allege that Annee was present when Black violated Blanton's rights, or that Black's actions were at the time "otherwise within [Annee's] knowledge."

### 4. *Claims Against Municipal Defendants*

Blanton's remaining § 1983 claims against the City, IPD, and Toler, and against Black and the six IPD officers in their official capacities (collectively, the "municipal defendants") fare no better than her First and Eighth Amendment claims. Any complaint under § 1983 against a municipality, a municipal officer in his or her official capacity, *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985), or a municipal department or agency, *Jones v. Bowman,* 694 F.Supp. 538, 544 (N.D.Ind.1988), must allege that the constitutional deprivation was caused by enforcement or exercise of a municipal policy or custom. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *see Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 693–94, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Further, the complaint must set out some fact or facts to suggest that the claimed policy or custom actually exists, and that the alleged deprivation resulted from enforcement or pursuit of that policy—i.e., that the deprivation was not an "isolated" incident. *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir.1985); *see Leatherman v. Tarrant*

*County Narcotics Unit*, ——— U.S. ———, ———, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993).[7]

■ Blanton's arguments fail to comply with these basic requirements. Blanton claims that the municipal defendants failed to train Black and other officers to respect the civil rights of Blanton and other Indianapolis citizens, and failed to prevent the actions taken by Black and the six IPD officers on March 13, 1991. These contentions fail to state a § 1983 claim against the municipal defendants, however, because they do not allege that the defendants' failures stemmed from the exercise or pursuit of any municipal custom or policy. A § 1983 plaintiff does not have to describe a custom or policy in detail, *see Leatherman*, ——— U.S. at ——— – ———, 113 S.Ct. at 1162–63; *Strauss*, 760 F.2d at 769, but she must at least *allege* that a custom or policy exists, and provide "some fact" that tends to support the allegation. *Strauss*, 760 F.2d at 767–69. Blanton has failed to do either.

### B. *Claims Under §§ 1985 and 1986*

■ Finally, Taylor has moved for dismissal of Blanton's claims that he conspired with Black and the six IPD officers to de- prive Blanton of her civil rights, in violation of 42 U.S.C. § 1985(3), and that he knowingly failed to prevent the acts conspired to be done from occurring, in violation of 42 U.S.C. § 1986. Blanton's § 1986 claim is wholly derivative of her § 1985(3) claim, *see Grimes v. Smith*, 776 F.2d 1359, 1363 n. 4 (7th Cir. 1985); *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1485 n. 16 (7th Cir.1985), so the key question is whether Blanton's § 1985(3) claim against Taylor is sufficiently stated.

■ It is not. A valid § 1985(3) claim must allege (1) a conspiracy, (2) a purpose of depriving any person or class of persons of equal protection, or equal privileges and immunities, under the laws, (3) an act in furtherance of the conspiracy, (4) a resulting injury to person or property, or a deprivation of rights, and most importantly (5) a racial or otherwise class-based discriminatory animus. *Quinones v. Szorc*, 771 F.2d 289, 291 & n. 1 (7th Cir.1985); *Munson v. Friske*, 754 F.2d 683, 694–695 & n. 8 (7th Cir.1985); *Parker v. Chicago Housing Auth.*, 730 F.Supp. 115, 120 (N.D.Ill.1989). Blanton's claim lacks the fifth element, because she has not alleged that any defendant harbored any racial or other-

---

**7.** Some district courts within this circuit have questioned "the continuing validity of the *Strauss* pleading requirement" in light of *Leatherman*. *Montique v. Sheriff of Cook County*, 1993 WL 192934, at 2 (N.D.Ill. June 2, 1993). According to these courts, *Strauss* requires "a plaintiff [to] plead specific facts that provide a basis for his claim that the conduct that injured him was part of a government policy, practice, or custom." *Montique*, 1993 WL 192934, at 2 (collecting cases).

This Court does not find any conflict between *Strauss* and *Leatherman*, however. *Leatherman* overruled a Fifth Circuit pleading standard that required § 1983 complaints against municipal corporations, or municipal officials in their official capacities, to "state with particularity the basis for the claim," including facts which showed "why the defendant[ ] cannot successfully maintain the defense of immunity." *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir.1985); *see Palmer v. San Antonio*, 810 F.2d 514 (1987). *Leatherman* held that this requirement—which effectively forced a § 1983 plaintiff to plead detailed facts that would thwart in advance a possible immunity defense by the municipality—conflicted with the liberal pleading standard set out in Rule 8(a)(2) of the Federal Rules of Civil Procedure, and amplified in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957):

[T]he Federal Rules ... do not require a claimant to set out *in detail* the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Id.* at 47, 78 S.Ct. at 103 *quoted in Leatherman*, ——— U.S. at ———, 113 S.Ct. at 1163.

*Strauss*, in contrast to *Elliott* and *Palmer*, created no "heightened pleading requirement." Rather, *Strauss* held only that a § 1983 plaintiff, to fairly set out "the grounds upon which the claim rests," must plead *"some* fact"—meaning something more than "no facts"—which indicate that the alleged municipal policy does in fact exist. *Strauss*, 760 F.2d at 767–68 (emphasis added). In fact, the court in *Strauss* made clear that it "[did] not mean to imply that a plaintiff must plead in greater detail, but merely that the plaintiff must plead some fact or facts tending to support his allegation that a municipal policy exists that could have caused his injury." *Id.* at 769.

It is therefore evident that *Strauss*, correctly understood, is not affected by *Leatherman*. Indeed, the cases are quite consistent in echoing *Conley*'s requirement that a complaint give "fair notice of ... the grounds upon which [the plaintiff's claim] rests." *Leatherman*, ——— U.S. at ———, 113 S.Ct. at 1163; *Strauss*, 760 F.2d at 768.

**1204**

wise class-based discriminatory animus, nor has she alleged any fact—e.g., her race—from which such an allegation could be inferred. Blanton therefore has failed to state a claim under § 1985(3) and, by derivation, § 1986.

### III. CONCLUSION

For the reasons discussed above, the motions to dismiss filed by Taylor and the remaining identified defendants are GRANTED. All of Blanton's claims against Taylor under 42 U.S.C. § 1983, 1985, and 1986, and her § 1983 claims against Annee, the City, IPD, Toler in his official capacity, Black in his official capacity, and the six IPD officers in their official capacities, accordingly are DISMISSED WITH PREJUDICE.

SO ORDERED.